GEORGE S. BOWKER *vs.* MILL RIVER LOAN FUND ASSOCIATION.

An incorporated Loan and Fund Association was formed for the purpose of creating a fund, by the payment of entrance fees, monthly instalments on shares subscribed for and held by its members, and fines, and by investments and loans of the moneys so received, which fund, whenever it should amount to five hundred dollars on each share, should be divided among those of the members who should not have obtained advances from the association. The by-laws provided that each member should pay two dollars a month as monthly dues for each share held by him, and that whenever the funds on hand should amount to the sum of five hundred dollars, the same should be "put up to competition among the members, and that the member bidding the greatest discount for the same should be entitled to it," together with a limited number of further " shares " at the same rate, if he desired, upon executing a bond and satisfactory mortgage for the payment of his monthly dues, interest and fines; and that when the fund should have reached the requisite amount the same should be divided among the owners of the unredeemed shares. An owner of six and one half shares bid off and took at a discount the amount of money to which he was entitled upon his shares, and executed to the association a bond secured by mortgage for the repayment thereof to the association " in the manner following, to wit, thirteen dollars per month as monthly dues, to be applied in liquidation of the principal sum," and a certain amount as interest, " until the said payments of monthly dues, at thirteen dollars per month," should amount to the principal sum, pursuant to the by-laws of the association. *Held,* that thereafter the only relation which such person sustained to the association was that of a debtor; that the debt was not upon a usurious consideration; and that he could not maintain a bill in equity against the association to interfere with the management of their business.

Bowker *v.* Mill River Loan Fund Association.

BILL IN EQUITY, alleging that the defendants are a corporation, incorporated in 1854, and doing business under the statutes respecting Loan and Fund Associations, and having certain printed by-laws and amendments thereto, the material portions of which are copied in the margin ; * that the two amendments

---

\* *Preamble.* We, the undersigned, having associated and formed a company for the purpose of accumulating a fund for the purchase of real estate, making improvements thereon, removing incumbrances therefrom, for making loans, and for the further purpose of accumulating a fund to be returned to members who do not obtain advances, when the funds of the association shall amount to five hundred dollars per share, do severally agree that the following articles shall govern us and determine our rights, duties and privileges, as members of such association.

ART. 2. *Members.* All persons who shall pay the entrance fee and hold one or more shares and sign the articles shall be members of this association.

ART. 10. *Monthly Dues and Fines for Non-payment.* Every member of this association shall, during the week next preceding every regular meeting, pay two dollars as monthly dues for each share held by him, and for any neglect in so doing shall be fined for every non-payment on each share as follows : for the first month, ten cents ; second month, twenty-five cents ; third month, thirty-seven cents ; fourth month, fifty cents ; and every succeeding month, one dollar. All shares on which no payment has been made for six months shall be forfeited. All payments by a member shall be applied to the oldest charge against him on the books. No payment of monthly dues or fines shall be received from any member except for the whole amount of such dues and fines due by such member at the time of tendering such payment, except allowed by the board of directors. Members paying their dues three months or more in advance, shall be entitled to interest at the rate of six per cent. per annum.

ART. 11. *Entrance Fee.* Every member of this association shall pay an entrance fee of one dollar per share, until the conclusion of the second regular meeting of the association, after which time new members shall pay such increased entrance fee, and the monthly dues from the commencement of the association, as the board of directors shall judge to be sufficient to place the new members upon the same footing as the original shares. All shares on which an entrance fee only has been paid shall become forfeited in two months after they shall have been subscribed for. The arrears for new shares shall be paid in full, or in such instalments and under such penalties as the board of directors shall determine.

ART. 14. *Bidding for Loans.* Whenever the funds of the association shall amount to the sum of five hundred dollars, (one share,) the same shall be put up to competition among the members by the president, at a regular meeting of the association, and the member bidding the greatest discount for the same shall

of the by-laws, which are copied, were illegal and invalid; that on the 9th of April 1858 the plaintiff became a subscriber for six and one half shares in the association, and under the by-

be entitled to it, for the purpose of building or purchasing freehold or leasehold premises, or removing incumbrances therefrom, which he shall mortgage to the association for the payment of his subscriptions, interest, fines, &c. In case a member is desirous of procuring more than one share, he shall have the privilege (after having offered the highest discount on one) of receiving fourteen more shares, at the same amount of discount, out of the next moneys to be received, provided he subscribes and pays the value of such additional shares as have not already been subscribed and paid for. But no member shall purchase more than fifteen shares. The purchaser of any shares shall pay an interest from the time of purchase, of six per cent., payable monthly, as a redemption fee, and, in case the member so purchasing shall fail to comply with the terms of purchase, he shall be charged with the interest for the time the association may be deprived of the same through his neglect. Members purchasing may subscribe for a fractional part of a share, not less than a quarter. The member so purchasing shall, within one week after becoming the purchaser of such share or shares, tender to the secretary, to be submitted for the approval of the proper officers, a written statement of the location, description and value of the property which he proposes as security for the money to be advanced by the association. If the officers are satisfied with the sufficiency of the value of the security thus offered, the association shall advance the amount to the member when the attorney of the association shall be satisfied with the title thereto, and upon the execution of proper instruments. In case the member should build, the money shall be advanced in sums necessary for the prosecution of the building until its completion, the association executing an agreement to that effect at its own expense. In such case, the member shall produce a written certificate from the builder engaged in the erection of the building, certified by the surveyor of the association, of the sum necessary for such purpose. But no money shall be advanced for the purpose of building until the first story of the premises shall have been erected, unless the board of directors are satisfied that it is safe and proper so to do, and a bond and mortgage, under the direction of the attorney, shall have been executed and delivered by the member to the association.

Art. 16. *Substitution of Mortgagor.* Whenever any mortgagor to this association shall sell the mortgaged premises, the purchaser thereof, if not already a member, may become so, on being elected and paying an entrance fee of two dollars per share, and assuming all the stipulations, agreements and conditions of the original mortgagor, by a proper instrument drawn by the attorney of the association, to be executed at the expense of the purchaser, in which case the original mortgagor shall receive a discharge (at his expense) from all personal liability on account of such mortgage.

laws took out $2080 on said shares, and gave to the defendants a bond, the condition of which was that he should "pay or cause to be paid unto the abovenamed corporation, its successors

ART. 17. *Change of Mortgaged Premises for others.* In case any mortgagor to this association shall wish to change the mortgage from the original mortgaged premises, he may do so upon giving security of sufficient value, to be approved by the proper officers, and paying a transfer fee of one dollar per share, and he shall receive a discharge of all papers connected with the original mortgage.

ART. 18. *Redemption of Mortgaged Premises.* When any mortgagor to this association shall desire to redeem his premises from the mortgage upon it, he shall give seven days' notice to the secretary before the next meeting of the board of directors. The secretary shall lay the matter before them, and they shall decide the amount to be paid by the mortgagor. In case this sum is agreed to by the mortgagor, he shall pay the said amount and receive a discharge and release of the mortgaged premises, and all the papers and documents connected therewith.

ART. 20. *Withdrawal of Shares.* In case any member, by reason of sickness, or through misfortune, is unable to continue the payment of his or her subscription to the association, he or she may give notice to the secretary of an intention to withdraw from the association; and, in case the board of directors are satisfied as to the grounds of withdrawal, the monthly dues paid by the party into the association shall be returned. Any person wishing to withdraw for the above reasons, or other reasons satisfactory to the directors, and who shall have been a member of the association two years, and be clear of the books; shall receive an interest of four per cent., and any member of more than three years' standing shall be entitled to an interest of five per cent., on the amount of funds paid by such member or members into the funds of the association.

ART. 30. *Effects of Entries made by Secretary.* The entries made by the secretary in the books under his charge, in all matters relating to his office, shall be *prima facie* evidence of all the matters intrusted in all questions, suits, controversies and disputes between this association, the officers, directors or members thereof, and any other officer or member. Any member feeling aggrieved by any entry made in respect to him may appeal to the association at a regular meeting, and the decision made thereon shall be final and conclusive. Before the adjournment of each meeting the secretary shall read the minutes thereof, which shall be corrected and ordered for engrossment. At the next meeting the minutes shall be read from the engrossment, and, if no farther corrections are made, shall be final.

ART. 31. *Termination of the Association.* Whenever it shall appear by the books of the association that there is sufficient money on hand and due the association to pay on each share, which has not been redeemed by the association, to the holder thereof, the sum of five hundred dollars, over and above all debts and liabilities of the association. all arrears of monthly dues, fines and otherwise,

or assigns, the sum of $2080 in the manner following, to. wit : thirteen dollars per month, on or before the first Monday of each and every month, that is to say, as monthly dues, to be applied in liquidation of the said principal sum of $2080, and ten dollars and forty cents as monthly interest, at six per centum per annum on the said principal sum, until the said payments of monthly dues at thirteen dollars per month amount to the said principal sum of $2080, pursuant to the by-laws of the said corporation, whereof the said obligor is a member, and also all fines which shall be charged to him pursuant to the by-laws of the said corporation, during the said period," &c. ; that this bond was secured by a mortgage of real estate ; that the plaintiff has paid upon said bond $856 as monthly dues, $387.41 as monthly interest, and fines to a small amount ; that a large

shall become payable at once. The board of directors shall then pay, satisfy and discharge, first, all debts and liabilities of the association, and then pay over to the owner of each unredeemed share an equal dividend of all sums on hand, and which shall afterwards be received, until the whole shall be divided ; and, from the time of the commencement of the payment of such dividends, no further monthly dues or premiums shall be payable, except that all arrears shall be fully paid up, and the trustees shall deliver to each mortgagor, who has complied with the conditions of his mortgage, a discharge and satisfaction thereof, and all papers connected therewith. After the performance of the foregoing duties this association shall cease to exist, and it shall not be sooner dissolved, nor shall this article be altered, amended or repealed, without the unanimous consent of all the voting shares belonging to this association.

ART. 34. *Shares and Par Value.* The par value of the shares in this association shall be five hundred dollars per share, and the association shall not issue more than one thousand shares.

*Amendment of May 7th* 1860. Whenever at any monthly meeting of the association there shall be sufficient funds in the treasury to cancel one unredeemed share, at the rate heretofore named, which cannot be loaned on bond and mortgage, the same shall be offered at auction for the purpose of cancelling unredeemed shares ; provided that no greater sum shall at any time be paid for any share than the amount of monthly dues paid on the same, and interest thereon at the rate of twelve per cent. per annum, for the time said dues have been on deposit, computing interest on the monthly dues at two dollars per month from the commencement of the association.

*Amendment of April 6th* 1863. The maximum rate of interest on cancelled shares is hereby advanced from twelve to fifteen per cent.

number of shares have been cancelled by the defendants pursuant to the two amendments of the by-laws, and a large amount of money paid for the same; that at the time of the filing of the bill a proposition was pending to raise the maximum rate of cancelling shares to eighteen per cent., which the plaintiff had reason to fear would be adopted; that the defendants can only cancel shares pursuant to article 20 of the by-laws; that the two amendments of the by-laws are in violation of article 31 of the by-laws, and prolong the time for the association to continue, during which the plaintiff will be obliged to pay monthly dues and interest on his bond; that, upon information, the time has been reached when by article 31 there is sufficient money on hand and due to the association to pay on each unredeemed share the par value thereof, and he ought no longer to be required to pay monthly dues and interest on his bond, but that the same should be discharged; that if there is not sufficient money on hand and due, for this purpose, the plaintiff has a right to have the funds accumulate, so that the association may more speedily terminate, and his bond and mortgage be discharged; that the defendants claim that he shall pay the entire balance due on said bond, absolutely, and as a debt; that if the court should decide that he must do this, he claims to redeem the mortgage, and that the loan was usurious, and that but a small sum is due, which he is ready to pay; and that on such redemption he ought to be remitted to his original rights as a member, and to stand upon the same footing with the holders of unredeemed shares, as to profits. The prayer was, that the association might be wound up, an account taken and a receiver appointed, and that the defendants might be enjoined from cancelling shares as aforesaid, or adopting the pending proposition, and for other relief.

The answer, amongst other things, averred that the plaintiff is not the owner of any unredeemed shares, and that the only relation which he holds to them is that of a borrower of funds which he is bound to repay in full, with interest, and no more, and that, by the true construction of the statutes, the by-laws and the condition of the bond, he has no interest in the matters

complained of, and no right to maintain this bill; and denied that the loan was usurious.

The plaintiff filed a general replication; and the case was reported by Merrick, J. for the determination of the whole court upon the pleadings.

P. C. Bacon & H. B. Staples, for the plaintiff.

G. F. Hoar & T. G. Kent, for the defendants.

HOAR, J. We do not understand that in this bill the plaintiff seeks a redemption of his mortgage by paying whatever may be found due upon it. It alleges that the funds of the defendant association are sufficient to pay on each unredeemed share the par value thereof, and that the plaintiff is therefore entitled to have his bond and mortgage discharged without further payment. If the funds are not now sufficient, it avers that they are nearly so; and that the plaintiff will be entitled to such discharge as soon as they have accumulated so as to reach the requisite amount; and he therefore seeks to restrain the defendants from such management of their business, and especially from redeeming other shares at such a rate, as will postpone the time at which he would otherwise receive a discharge. If these positions are not tenable, and the bond and mortgage constitute an absolute debt, then it is claimed that the bond is usurious; that the plaintiff is entitled to the deduction of the statute penalty for the usury; and that on payment of the small sum which would then remain due, and which is all that he offers to pay, he is to be restored to his rights as an original member of the defendant association, and allowed to share its profits. The prayer for relief by winding up the affairs of the association, the appointment of a receiver, an injunction, &c., rests upon the case thus stated.

The defendants deny that the contract was usurious, and deny that the plaintiff has any interest in their association, or any relation to it except as a debtor for the full amount of his bond which remains unpaid.

There is not such entire clearness in the by-laws of the asso ciation as would be desirable; and some parts of them, taken by themselves, undoubtedly present difficulties of construction.

But regarding them as a whole in relation to the contract of the parties, we think the position taken by the defendants is correct. The bond clearly obliges the plaintiff to continue his payments until the whole sum advanced to him shall be refunded. These payments are indeed said to be made " as monthly dues," according to the by-laws of the association, but are to be continued till the whole principal sum is repaid. The argument for the plaintiff maintains that this provision is a qualification of the absolute promise of payment; and that whenever, according to the by-laws, monthly payments are to cease, these payments upon the bond will cease also. But the provision can have its full effect, and without conflicting with the plain and express terms of the contract, if it is interpreted as having reference to the times and mode of payment under the by-laws. The payments are to be made " as monthly dues, to be applied in liquidation of the said principal sum ;" and monthly interest is to be paid "until the said payments of monthly dues" " amount to the said principal sum " " according to the by-laws of the association." By the 16th, 17th and 18th articles of the by-laws, a mortgagor may obtain a discharge from his obligations by a transfer or payment made in a different manner from that expressed in the bond. By article 30th, the entries made by the secretary in the books, unless corrected on appeal, are made binding and conclusive upon the members. These articles may have an important effect upon the direct stipulations of the bond and mortgage.

But further, in looking through the by-laws, it is manifest that the redemption of shares by the continuance of monthly payments until a fixed sum should be repaid, and then discharging the person whose shares are redeemed from the obligation to make further payments, which seems to have been the plan practically adopted by this association, was not expressly contemplated. There is nothing in the by-laws showing that the payment of monthly dues is in any case to cease until the final closing of the affairs of the association, unless in those special cases where a member withdraws upon terms allowed by the directors. The by-laws of all associations of the kind which

have been brought to our notice appear to have been formed on substantially the same model, and with reference to the payment of monthly dues on redeemed shares for an indefinite period. But there is nothing in these by-laws which prohibits such a contract as these parties have made, nor which is inconsistent with its literal execution when it is made. According to the rules of the association, there is no more express authority for an agreement that " monthly dues " on redeemed shares shall cease at any period before the closing of its affairs, than that they shall continue payable until a fixed sum is realized. We think the contract, as stated in the bond, was one which the parties were competent to make ; and that, under it, the plaintiff ceased to have any interest in the property of the association by virtue of his redeemed shares, and has no relation to it except that of a debtor.

The other ground taken by the plaintiff, that his bond and mortgage are usurious, is equally untenable, for reasons which were fully given in the recent case of *Delano* v. *Wild,* 6 Allen, 1, and which it will therefore be sufficient briefly to restate.

By joining the association and subscribing for shares therein, the plaintiff became bound to make a monthly payment upon each share, and incurred a liability for certain fines for non-compliance with his obligations as a member. In consideration of these undertakings on his part, he became entitled to the privileges of a member, the principal of which was the right to participate in the final distribution of an accumulating fund, the value of which right would be contingent upon the success of the business of the association, and might be increased or diminished by the estimate which other members might make of its value, and their consequent willingness to dispose of their interest on more or less favorable terms. The period to which his monthly payments would continue is of course indefinite. Whether, if he continues a member, he will ultimately receive more or less than the amount which he has paid, with interest, is uncertain. In view of these facts, it was held in *Delano* v. *Wild* that it was not a usurious contract to agree to continue his payments as if he had remained a member, and to receive

any agreed sum in hand for the sum to which a member would be entitled on the final settlement of the affairs of the association. In the present case, the only difference is that the payment of monthly dues is limited to a fixed time and amount. But he is thereby released from an obligation to continue to make it for an indefinite time and to an unlimited amount. The value of this release cannot be computed, and is therefore the subject of lawful agreement by the parties. The contract is not a mere advance or loan of money, to be repaid with more than lawful interest, as it would be if made with a stranger ; but the parties, having a subsisting contract by which the member is to pay certain sums monthly for a period of time that is contingent, and the association being then bound to repay him a certain sum, which may be more or less than they have received from him, substitute for this contract a new one, by which a limit is placed to the member's payments, and a smaller sum received by him in advance in exchange for the right to a larger at some doubtful time in the future. There is nothing usurious in such a contract. It would be a contract on sufficient and lawful consideration if the plaintiff received nothing, and is none the less so that he is induced to make it by a payment to him in money.

*Bill dismissed, with costs, without prejudice to the right to redeem.*