JOHN R. HOBAN *vs.* BOSTON RETIREMENT BOARD.

Suffolk.    February 7, 1969. — April 15, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, &
REARDON, JJ.

*Retirement.   Veteran.   Words,* "Shall."

The words "with the approval of the retiring authority" in G. L. c. 32, § 58, give the authority a mere ministerial function and not discretionary power to refuse approval of a veteran's retirement under § 58 where all the other statutory requirements for such retirement are met.

BILL IN EQUITY filed in the Superior Court on September 9, 1968.

The suit was heard by *Brogna,* J.

*William H. Kerr* for the defendant.
*Charles E. Colson* for the plaintiff.

REARDON, J.   The plaintiff brought his bill under G. L. c. 231A, alleging that he was entitled to retirement under

---

G. L. c. 32, § 58, as amended through St. 1965, c. 498, § 3,[1] in the grade of master of the House of Correction for Suffolk County. The plaintiff and the defendant stipulated that the cause might be determined on the facts stated in the pleadings, as being all the material ultimate facts, and that the Superior Court and any appellate court should be at liberty to draw inferences as if the pleadings constituted a case stated.

The plaintiff, a veteran within the meaning of G. L. c. 32, § 58, has been continuously in the service of Suffolk County since December 9, 1936. On November 28, 1956, by virtue of promotion, he became deputy master at the House of Correction. On August 21, 1967, pursuant to his duties as deputy master, he assumed the duties of master, in the absence of the master, and served as such until the master's retirement on October 31, 1967, at midnight. Thereafter, by appointment, he served as acting master from November 1, 1967, to February 13, 1968, and as master from February 14, 1968, to May 14, 1968. Since 12:01 A.M. on May 15, 1968, he has served as deputy master. On March 27, 1968, he filed for retirement under G. L. c. 32, § 58, as amended. On April 11, 1968, the defendant voted to deny his retirement as a matter of discretion in that the plaintiff's service as duly appointed master of but six weeks "was not substantial enough to warrant his retirement under Section 58." Subsequently, on July 19, 1968, the plaintiff filed a "veteran's application for retirement" dated May 7, 1968, also under G. L. c. 32, § 58. On August 28, 1968, the defendant by vote denied the second application on the ground that "retirement can only be

[1] "A veteran who has been in the service of the commonwealth, or of any county, city, town or district, or any housing authority, for a total period of thirty years in the aggregate, shall, at his own request, with the approval of the retiring authority, be retired from active service at sixty-five per cent of the highest annual rate of compensation, including any bonuses paid in lieu of additional salary or as a temporary wage increase in addition to his regular compensation, and including any maintenance allowance, payable to him while he was holding the grade held by him at his retirement, and payable from the same source." This statute was amended by St. 1968, c. 700, to raise the rate of retirement compensation from sixty-five to seventy-two per cent of the highest annual rate of compensation.

from the position held at the time of retirement. Since May 15, Mr. Hoban has been Deputy Master," so there could be "no (nunc pro tunc) action." A decree was entered in the Superior Court ordering that the plaintiff be retired in the grade of master. The judge made rulings that the reason for denial of retirement in that grade stated by the defendant was "contrary to the statutory language and the intent of . . . General Laws, Chapter 32, Section 58 . . . [and that] Section 58 does not grant to the retiring authority any discretion in withholding approval by determining whether or not any period of time served at the highest annual rate of compensation shall be a prerequisite to its approval." From this decree the defendant appealed.

Before us is the question whether the statutory language "with the approval of the retiring authority" vests the defendant with administrative power or rather defines a function which is simply ministerial.

A review of the legislative history of § 58 indicates that St. 1920, c. 574, § 3, the original version of that section, was the end product of a series of bills introduced in the General Court in the 1920 session. Senate Bills Nos. 57–60, inclusive, were four proposals dealing exclusively with the retirement of incapacitated veterans of the "Spanish war" in public employ. Senate Bills Nos. 317–320, inclusive, were concerned with the retirement of incapacitated veterans of the "German war," also in public employ. Each of the four bills in the first set had a counterpart in the second set. Thus, Senate Bills Nos. 58 and 317 provided that the employee "*shall* be retired from active service, with the consent of the governor." Senate Bills Nos. 59 and 318 stated of the veteran he "*may* be retired from active service, with the consent of the mayor." Senate Bills Nos. 57 and 319 said he "*may* be retired from active service by the commissioners of the county in which he is employed, with the consent of the governor." Senate Bills Nos. 60 and 320 provided he '*may* be retired from active service by the city council of the city, or by the selectmen of the town." There was thus before the Legislature a choice between "shall," and "may,"

and after proceeding through successor bills containing subject matter similar to that of the original eight and using the word, "shall," c. 574 was adopted with the language "shall, at his own request, with the approval of the retiring authority, . . . be retired." It would appear that this legislative choice was intended to confer purely a ministerial role on the retiring authority. Statute 1943, c. 514, § 3, which amended § 58, did not contain the word "incapacitated." Successor changes in the statute do not appear to negate the effect of the word "shall," originally chosen by the Legislature. That this is a sound inference is buttressed by reference to G. L. c. 32, § 57, where, relative to retirement of veterans with ten years of public service who are incapacitated, it is provided that they "may, upon petition to the retiring authority, be retired, in the discretion of said authority, from active service . . . ." Here is sufficient indication of explicit language which might have been employed in § 58 had the Legislature so desired.

A collection of cases on the subject appears in *Springfield* v. *Commonwealth*, 349 Mass. 267, 271–272, which is cited in the defendant's brief. As was there stated, "The crucial word 'approval' may have different meanings depending upon the context in which it is used and the subject matter to which it is applied." In the *Springfield* case, an action brought by the city to recover expenses from the Commonwealth which the city incurred for aid to poor persons having no lawful settlements within Massachusetts, the accounts sued upon did not appear to have been approved by the Department of Public Welfare as required by G. L. c. 117, § 18, or certified by the comptroller as called for by G. L. c. 121, § 42. We held the approval and certification to be merely ministerial acts not limiting the obligation of the Commonwealth to respond to an action on the accounts. It is our view that in this case also the function of the retiring authority was ministerial solely. See *Godfrey Coal Co.* v. *Gray*, 296 Mass. 323; *Lowell* v. *Massachusetts Bonding & Ins. Co.* 313 Mass. 257, 271; *Seney* v. *Board of Health of Northampton*, 314 Mass. 272.

The defendant has argued that the retiring authority prior to July 1, 1961, was the mayor and city council of Boston performing under G. L. c. 34, § 4, the duties of county commissioners, which they relinquished, relative to retirement, to the defendant under St. 1960, c. 728, when the defendant assumed such responsibilities under that statute. It is contended that the mayor and city council acting as county commissioners were not generally speaking ministerial officers, and nothing in St. 1960, c. 728, served to divest the retirement board as their successors of administrative responsibility. However, administrative officers may still in certain of their functions also perform duties which are ministerial in nature. *Daly* v. *Mayor of Medford*, 241 Mass. 336, 339–340. This would appear to be such a case.

Finally, it may be noted that while we have dealt with § 58 in a number of prior opinions, *Smith* v. *Lowell*, 334 Mass. 516, *Murphy* v. *Boston*, 337 Mass. 560, and *Weiner* v. *Boston*, 342 Mass. 67, in none of these cases have we intimated that the retiring authority has a right to refuse approval where all other statutory requirements for retirement have been met.

*Decree affirmed.*